IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

RECEIVED
2007 FEB 16  P 1: 27

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| ROB CYRUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 2:07-CV-144-ID |
| | ) | |
| HYUNDAI MOTOR MANUFACTURING OF ALABAMA, LLC | ) ) ) ) ) | Jury Trial Demanded |
| Defendant. | ) | |

## COMPLAINT

1. Plaintiff, Rob Cyrus is over 21 years of age, and for all matters relevant to this Complaint, he was employed by Defendant at its Montgomery, Alabama facility.

2. Defendant, Hyundai Motor Manufacturing of Alabama, LLC, is a corporation that at all times relevant to this Complaint was doing business in Montgomery County, Alabama where it had its principal place of business.

3. Plaintiff, Rob Cyrus brings this Complaint pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, Title VII of the Civil Right Acts 1964 Amended.

4. Plaintiff, Rob Cyrus has exhausted all administrative prerequisites to filing suit under Title VII.

## FACTUAL ALLEGATIONS

5.  Plaintiff, Rob Cyrus was employed by Hyundai Motor Manufacturing Alabama, LLC (HMMA) in a position of director of purchasing. Plaintiff, Rob Cyrus is white and American.

6.  Plaintiff, Rob Cyrus began his employment with Defendant HMMA in the fall of 2002. From 2002 through the fall of 2005 Plaintiff, Rob Cyrus had no complaints by any of his superiors about his performance in the position of director of purchasing. On the contrary he was told he was doing an excellent job at that time.

7.  In September of 2005 Plaintiff, Rob Cyrus was at a meeting with Mr. Keith Duckworth, who was the deputy president of HMMA. Plaintiff, Rob Cyrus reported to Mr. Duckworth about issues of Koreans discriminating against Americans at HMMA and about Korean HMMA employee involved in work place violence creating a hostile work environment.

8.  In September, 2005, Plaintiff, Rob Cyrus and his Korean counter part, Mr. J. Y. Choi went to a meeting with representatives of a vendor who had traveled from out of town to Montgomery to discuss some quality control issues. Mr. J. Y. Choi was also a director of purchasing at HMMA, but he was a Korean. Both Mr. Choi and the Plaintiff, Rob Cyrus spoke at the meeting. Mr. H. I. Kim HMMA, chief operating officer, was at the meeting. He became enraged at the

representatives of the vendors at the meeting. Both Plaintiff, Rob Cyrus and Mr. Choi spoke at the meeting. They simply requested that the visitors be allowed to make their presentation. Plaintiff, Rob Cyrus and Mr. Choi spoke in the same way for the same purpose, and to the same extent. Neither Mr. Choi nor the Plaintiff, Rob Cyrus became upset or abusive, or acted in any way other than a business like manner. Both the Plaintiff, Rob Cyrus and Mr. Choi remained calm and focused on the purpose that the meeting was called for.

9. Later, that afternoon, Mr. Choi came to Plaintiff, Rob Cyrus in front of Mr. Jason Lee, another Korean, and CEO of HMMA and made the statement that neither he nor the Plaintiff, Rob Cyrus had done anything wrong in the meeting with the vendor in which Mr. Kim had become so enraged. Mr. Choi told Plaintiff, Rob Cyrus that Mr. Kim had gone to the president of HMMA, Mr. Ahn, another Korean, and had complained about both of their conduct in the meeting.

10. Shortly thereafter, on the same day Plaintiff, Rob Cyrus spoke with Mr. Duckworth. Mr. Duckworth told the Plaintiff, Rob Cyrus that he had nothing to worry about, that Mr. Kim's conduct in the meeting was just the Korean style. Mr. Duckworth told Plaintiff, Rob Cyrus that his reputation in standing with the company was excellent.

11. Plaintiff, Rob Cyrus had no complaints about his work or his performance until October 22, 2005, when Mr. Duckworth called the Plaintiff,

Rob Cyrus to an evening meeting at a restaurant in Montgomery on the pretext of discussing Plaintiff, Rob Cyrus' health. At that meeting, Mr. Duckworth told the Plaintiff, Rob Cyrus that he wanted him to turn in his resignation, stating that the reason for this was that the president, Mr. Ahn and Mr. Kim were upset with him and wanted him to resign.

12. After this meeting with Mr. Duckworth Plaintiff, Rob Cyrus asked Mr. Choi if anything had happened to him. Mr. Choi said that nothing had happened to him and there would be nothing happening to him.

13. Plaintiff, Rob Cyrus wrote a letter thereafter to the President, Mr. Ahn, Deputy President Mr. Duckworty, and Chief Operating Officer Mr. Kim and the Director of Human Resources of HMMA, Mr. Kimble complaining about race discrimination and retaliation on November 6, 2005. Complaining that he had been subjected to discriminatory treatment because of his race and that he was being retaliated against because he had reported discrimination against Americans by Koreans, sexual harassment of a female employee in the work place by Koreans and because he had reported about a Korean employee involved in work place violence.

14. On December 6, 2005, Plaintiff, Rob Cyrus received a letter from Mr. Duckworth terminated his employment with HMMA. Between the time of Plaintiff's meeting with Mr. Duckworth on October 22, 2005, and his termination

on December 6, 2005, Plaintiff, Rob Cyrus was not allowed to return to his regular duties. Mr. Choi, however, was not disciplined in any way, or asked to resign. Mr. Choi continued his employment in the position of director of purchasing at HMMA though Mr. Choi had done exactly the same thing that Plaintiff, Rob Cyrus had done he was not subjected to any adverse employment action. The individuals demanding.

## COUNT I

Plaintiff adopts and realleges each and every material averment as it is specifically set out and plead herein.

15. Defendant discriminated against the Plaintiff on the basis of his race and national origin when it terminated him.

16. Defendant's violation was knowing and willful. It violated 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964 as Amended, 42 U.S.C. § 1981.

17. As a consequence of Defendant's wrongful conduct Plaintiff has suffered injuries and damages.

Wherefore, Plaintiff demands judgment against Defendant for lost wages, lost business opportunity, future lost wages, future lost business opportunity and advancement, mental anguish damages, punitive damages, a reasonable attorney fee and cost and expenses of this litigation. Plaintiff further seeks the equitable relief of front pay and/or reinstatement and such other further,

and difference relief as the Court may determine to be appropriate.

## COUNT II

Plaintiff adopts and realleges each and every material averment as it is specifically set out and plead herein.

18.  Defendant retaliated against the Plaintiff by taking adverse employment action after he complained about and reported discriminatory treatment. In violation of 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1969 as Amended 42 U.S.C. § 1981a.

19.  Defendant was aware that the discharge of Plaintiff was taken in retaliation of Plaintiff's protected conduct but nevertheless discharged the Plaintiff with full knowledge of the negative affect it was having on the Plaintiff.

Wherefore Plaintiff demands judgment against Defendant for compensatory and punitive damages, including damages for lost wages, lost benefits, lost future wages and benefits, lost promotional advancement and professional advancement, business appointment is reasonable attorney fee, cost and expense associated with this litigation. Plaintiff further seeks the injunctive relief of front pay and/or reinstatement and such other further, and difference relief as the Court may determine to be appropriate.

_____
Richard J. Stockham, III
State Bar STO034
Attorney for Plaintiff

**Plaintiff demands trial by struck jury on all issues triable to a jury.**

**SERVE DEFENDANTS BY CERTIFIED MAIL AT:**

Hyundai Motor Manufacturing Alabama LLC
c/o Richard E. Neal
700 Hyundai Blvd.
Montgomery, AL 36105